UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE SHIPMAN AGENCY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  4:17-3087 |
| | § | |
| | § | |
| | § | **JURY** |
| IMDB.COM, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff The Shipman Agency, Inc. ("Shipman") by and through the undersigned counsel, and files this Complaint against Defendant IMDb.com, Inc. ("Defendant") and alleges the following:

### I.     THE PARTIES

1.     Plaintiff The Shipman Agency, Inc. ("Shipman" or "Plaintiff") is a corporation organized and existing pursuant to the laws of the state of Texas and having a principal place of business at 4736 Renwick Drive, Bryan, Texas 77802.

2.     On information and belief, Defendant IMDb.com, Inc.  ("IMDb") is a Delaware corporation with its principal place of business in Seattle, Washington.  IMDb can be served with process at its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.     On information and belief, Defendant IMDb operates the following websites: https://www.imdb.com and https://pro.imdb.com.

## II.    <u>FACTUAL BACKGROUND</u>

*The Shipman Agency, Inc.*

4.    Plaintiff is one of the only woman-owned, full service, national advertising agency, television creation and production company in the outdoor programming entertainment industry. Plaintiff's primary business is located in Bryan, Texas.

5.    Stephanie Shipman is the CEO of Plaintiff and the Executive Producer of Plaintiff's outdoor themed reality television shows "Ammo and Attitude™," "The Right Stuff™," "Shot to the Heart™," "Blood Lines™," and "Untamed™." *See* www.shipmanagency.com.

6.    Shipman has also developed reality television shows with various additional themes involving restaurants, luxurious homes, storybook weddings, and makeovers. *See, e.g.*, "Silver Palate," "Luxury Living," "Glass Slipper Show," and "Glamour Girl," www.shipmanagency.com/shows.

7.    Shipman's television shows have run for over six seasons and have received numerous television awards since 2010.

8.    Shipman markets its goods and services to customers throughout the United States by way of extensive media advertising, including on television, internet, social media platforms such as Facebook, Twitter, and on Shipman's websites, including www.shipmanagency.com, www.rightstufftv.com, www.ammoandattitude.com, and www.shottotheheart.com.

9.    Plaintiff, by and through itself, and by and through its chief executive officer Stephanie Shipman, is the owner of several trademarks at common law, including AMMO AND ATTITUDE™, THE RIGHT STUFF™, SHOT TO THE HEART™, BLOOD LINES™, and

UNTAMED[TM]. Shipman has federal trademark applications pending for AMMO AND ATTITUDE[TM], THE RIGHT STUFF[TM], SHOT TO THE HEART[TM]. *See* Application Serial Nos. 87/443,646; 87/442,603; and 87/443,651.

10.     Shipman has invested significantly in its business as well as its branding, including use of its marks since at least as early as 2010.

11.     As a result of its extensive advertising and promotion of its goods and services, sound business practices, and operations, Shipman has established strong relationships with customers who have come to recognize and respect the goods and services identified by Shipman and identified by Shipman's trademarks. Accordingly, Shipman has developed substantial goodwill and a reputation for integrity in its market, both of which are inextricably intertwined with Shipman's intellectual property.

12.     Shipman's THE RIGHT STUFF[TM] mark is inherently distinctive and well known as used in connection with the goods offered by Shipman, namely the outdoor themed reality television series, resulting in recognition that the goods (i.e. the television shows) offered under the mark emanate from a single source—Plaintiff.

13.     As a result of Shipman's continuous use and promotion of THE RIGHT STUFF[TM] mark and other marks, the marks have become distinctive to designate Shipman, to distinguish Shipman and its products and services from those of others, and to distinguish the source or origin of Shipman's products and services. As a result of these efforts by Shipman, the consuming public throughout the United States, including in Texas, widely recognizes and associates THE RIGHT STUFF[TM] mark with Shipman.

14.     There is high likelihood that Plaintiff's existing and potential customers (i.e. viewers, contestants, and sponsors) will therefore be confused unless Defendant is enjoined.

15.    As a result of Plaintiff's continuous use and promotion of THE RIGHT STUFF[TM] mark, and other marks in the United States, Plaintiff has acquired valuable common law rights in the mark.

16.    Shipman has continuously used THE RIGHT STUFF[TM] mark in interstate commerce since at least as early as November 2, 2013 in International class 41 in connection with Entertainment services in the nature of an ongoing reality based television program.

17.    The goodwill embodied in Shipman's mark THE RIGHT STUFF[TM] and consequently Shipman's valuable reputation and credibility in the industry, depends on the integrity of the goods and services as being identified exclusively with Shipman – and not any other source.

18.    Further, the goodwill embodied in THE RIGHT STUFF[TM] depends on truthful and accurate information being associated with the goods, and not false and defamatory information.

19.    Through Shipman's consistent and continuous use, advertising and third party media attention, Shipman has developed enforceable common law rights in THE RIGHT STUFF[TM] mark. Shipman has established substantial goodwill with its customers via the mark and has developed an excellent reputation throughout the United States.

*IMDb.com*

20.    Defendant, the Internet Movie Database, abbreviated IMDb, describes itself as "the world's most popular and authoritative source for movie, TV and celebrity content. We offer a searchable database of more than 185 million data items including more than 3.5 million movies, TV and entertainment programs and 7 million cast and crew members." *See* www.imdb.com/help/show_leaf?about

21.     Defendant also operates a service called IMDbPro. Defendant describes IMDbPro as "the essential resource for entertainment industry professionals. This membership-based service includes comprehensive information and tools that are designed to help entertainment industry professionals achieve success throughout all stages of their career." *See* www.imdb.com/pressroom/

22.     Both the public facing IMDb.com and subscription based IMDbPro provide profile pages for individuals where biographical data and film or television related information is listed. An individual can, but does not need to be, a member of IMDb to have a public profile page. An advantage of being a registered user of IMDb is that the individual can then contribute content to IMDb.  *See* http://www.imdb.com/help/show_leaf?whyregister.

*The Dispute*

23.     The dispute in this case involves IMDb's refusal, despite repeated requests, to remove false information from a public IMDb.com and an IMDbPro profile that is defamatory and causing unfair competitive harm damaging to Plaintiff's business and business reputation.

24.     Sometime in February of 2017, Plaintiff discovered—for the first time—that a former employee of The Shipman Agency, Inc., Conrad J. Long ("Long"), had falsely claimed credit on his IMDb profile as a producer on Plaintiff's television shows The Right Stuff and Ammo and Attitude. *See* Exhibit 1.

25.     Plaintiff had previously been engaged in multiple (and contentious) lawsuits with this particular employee but had not known of this particular fact—that he was falsely claiming production credit—until February of 2017. Had Plaintiff known about this fact, Plaintiff would have taken action to remove the information much, much earlier.

26.     Shipman immediately notified Long, the former employee, of the false credit and demanded that Long remove the information. After multiple email exchanges and letters, Long ultimately stated that he had requested IMDb to remove the information but could do nothing further.

27.     Long had not been a producer on either The Right Stuff or Ammo and Attitude because he had been fired by Stephanie Shipman in 2013 for theft. Shipman sued Long in Texas state court and Florida state court in order to recover the money and property that Long had stolen. Shipman and Long had been, and are currently still engaged, in litigation in Florida state court. During the course of the litigation, Shipman discovered that Long has a criminal record.

28.     On March 15, 2017, Shipman, through her attorney, sent a letter to IMDb, requesting removal of the false producer credit given to Long for Shipman's television shows. Without responding, IMDb removed the credit to Long for the television show Ammo and Attitude but not the credit to Long as a producer for The Right Stuff. *See* Exhibit 2.

29.     On March 29, 2017, Shipman's attorney sent a second letter to IMDb, requesting removal of the production credit to Long for The Right Stuff.

30.     The same day, an attorney from IMDb responded, claiming that a screen grab of the end credits of the first episode of season one of The Right Stuff credited Long as a producer of the show. Accordingly, IMDb refused to remove the credit, claiming that the credit was therefore accurate.

31.     Stephanie Shipman was previously unaware of this alleged "credit" to Long on the first episode and immediately removed all copies of the first season of The Right Stuff that were accessible to her from the internet because this credit was false and apparently a mistake. It

had not been approved by her and she had not placed it there. Long had only worked as a bodyguard prior to his being fired and had never worked as a producer on The Right Stuff.

32.    Shipman, through her attorney, communicated again via email with the IMDb attorney, and sent him Long's employment contract and other documents in an attempt to convince IMDb that Long was not a producer on the first season of The Right Stuff. IMDb refused to remove the false information on Mr. Long's profile page because IMDb was not convinced that Long was simply a security guard for Shipman.

33.    On May 18, 2017, Shipman's attorney sent a third letter to IMDb with additional documentary evidence in an attempt to persuade IMDb to remove the false information from Long's profile. This letter included two excerpts from federal bankruptcy proceedings where Long testified under oath that he was a security guard during the first season of The Right Stuff. *Id.*  IMDb still refused to remove the information.

34.    Shipman then sought relief from a different avenue.

35.    Earlier, in December of 2016, Long and Shipman signed a settlement agreement to end the litigations, including in the Florida state court ("Lee County case"). *See The Shipman Agency Inc. v. Conrad J. Long*, 15-CA-3070, Circuit Court of the Twentieth Judicial Circuit, Lee County Florida.

36.    This settlement agreement was entered into several months prior to Long's fraudulent producer credit claim on IMDb. Therefore Long's fraudulent producer credit played no part in the settlement of the litigations.

37.    On July 7, 2017, Shipman filed a Motion to Enforce the Settlement Agreement in the Lee County case, asserting that Long was in violation of the non-disparagement clause of the

settlement agreement by falsely claiming he was a producer on The Right Stuff on his IMDb profile page.

38.    In that Motion, Shipman claimed that Long damaged and defamed Shipman's reputation by presenting the false statement that he was a producer on IMDb.com and was profiting from the false attribution.

39.    On September 5, 2017, after an evidentiary hearing with sworn testimony from Mr. Long, the Lee County Court held that Long was in breach of the non-disparagement clause of the settlement agreement. *See* Exhibit 3.

40.    The Lee County Court made a factual finding that Long was not a producer on the first season of The Right Stuff.  The Court stated during the hearing to Long – "You don't even really know what a producer does, right?"  *See* Sept. 5, 2017 Tr. at 17:12-13, Exhibit 4.

41.    On September 29, 2017, Shipman's attorney sent the Lee County Court's order to IMDb in another attempt to remove the false information.

42.    Shipman argued to IMDb that the question of whether Long was a producer had been decided by a court of law.  Long was not a producer on the first season of The Right Stuff, as determined by the Lee County court. Therefore the falsity of the producer credit should not be in doubt and there is no longer any reason to keep the credit on Long's profile.

43.    IMDb still refused to remove the information.

44.    Instead, IMDb wanted to have it both ways. It stated that it had altered Long's profile to provide a "notation" that is apparently used by IMDb to indicate that an individual is listed in credits, but did not appear in the film or show at issue.

45.    The "notation" is inadequate, completely confusing, and applied haphazardly across the profile page.  *See* Exhibit 5.

46.     Surprised that IMDb would place itself above a court of law as the ultimate finder of fact, Shipman informed IMDb that this was unacceptable and anything less than complete removal of the information would result in litigation. IMDb refused and this litigation ensued.

*Nature of the Allegations*

47.     Defendant's false description of fact and misrepresentation that Long, who is a convicted criminal, is a producer on The Right Stuff is misrepresents the nature, characteristics, and qualities of the television series The Right Stuff.

48.     Defendant's false description of fact and misrepresentation that Long, who is a convicted criminal, is a producer on The Right Stuff is likely to cause confusion or mistake as to the origin of The Right Stuff because it improperly attributes Long as a producer when he was not. Shipman was the "manufacturer or producer" of the physical goods at issue—the videos of the series episodes in first season of The Right Stuff and Long was not.

49.     Long has previously caused Shipman to lose business and customers as a result of his lies and poor behavior. The false advertising by IMDb that he is a producer on Shipman's television show The Right Stuff is further damaging Shipman's reputation in the television industry.

50.     IMDb is directly infringing Shipman's common law rights to THE RIGHT STUFF[TM] by willfully and intentionally falsely advertising that Long is a producer on The Right Stuff when they know that this fact is false.

51.     IMDb has known and currently knows, including from a finding of fact by a court of law, that Long was not a producer on The Right Stuff but intentionally and willfully refuses to remove the producer credit from his profile page.

52.     IMDb's false statements on its website and associated actions, is damaging Shipman's business reputation, causing the company to lose business, irreparably harming the goodwill of the business, as well as enabling Long to improperly profit from this false association by gaining business, clients, new movie and television contacts as a result.

53.     IMDb's actions in refusing to remove the false information are intentionally harassing Shipman in an attempt to injure Shipman's business reputation and silence yet another female voice in the entertainment industry.

54.     IMDb cannot claim that it is simply passing along information provided by another "information content provider" because IMDb is a direct actor that creates the content and information for the user profiles.

55.     IMDb selects and creates the content on the profile pages because, for example, IMDb uses an algorithm to determine what "title" to associate with an individual on the profile page. *See* www.imdb.com/help/show_leaf?knownfor (explaining that IMDb uses a complex weighting system to determine what an individual is "Best Known For" and that this algorithm is constantly being improved, such that the choices are recalculated on a periodic basis.)

56.     IMDb created the content, layout, design, and titles for Long's profile pages, including the confusing "producer-credit only" description that supposedly indicates Long was given producer credit but did no production work. This purported explanation does not provide any clarity as to the truth—that Long was not a producer.  Moreover, the changes made by IMDb to the profile page by their standards are incomplete because the alleged explanation is not even placed next to all of the instances of producer on the page.

57.     Although the public facing website, IMDb.com is free, IMDb is engaging in commercial speech because IMDb runs advertisements on the website to gain revenue in

connection with the content that is provided. As explained by IMDb, "[p]lease keep in mind that IMDb is a free service: our advertisers help us to continue providing you with great movie information, and thanks to them we can keep offering our popular service for free and continually improve our site with new content and features." *See* http://www.imdb.com/help/show_leaf?ads

58.     IMDb is engaging in commercial speech on the subscription based IMDbPro profile pages as well.

59.     Plaintiff respectfully seeks intervention of this Court to stop Defendant from intentionally and willfully continuing its present activities, for injunctive relief and for monetary damages.

## II.     JURISDICTION AND VENUE

60.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

61.     The Court has subject matter jurisdiction over this case under 15 U.S.C. §§ 1121, 1125, 28 U.S.C. §§ 1331, 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

62.     On information and belief, this Court has personal jurisdiction over Defendant under the Texas long arm statute because Defendant has established minimum contacts with Texas such that the exercise of personal jurisdiction over Defendant is proper under the due process clause of the United States Constitution. Defendant advertises its business and services over the internet at https://www.imdb.com and https://pro.imdb.com which reach residents in Texas.

63.     On information and belief, Defendant has established minimum contacts with Texas such that the exercise of personal jurisdiction over Defendant is proper under the due process clause of the United States Constitution because Defendant has members who have subscribed to the IMDbPro service that are residents of the State of Texas and of this district.

64.     Exercise of personal jurisdiction over Defendant is also proper under the due process clause of the United States Constitution because Defendant is committing the intentional tort of willful trademark infringement in Texas by providing services that infringe Plaintiff's trademark in Texas and by falsely advertising that is intentionally directed at Texas and its residents with the purpose and effect of injuring Shipman at its principal place of business in Texas.

65.     On information and belief, Defendant has willfully and voluntarily committed the acts complained of herein in at least this State.

66.     On information and belief, venue is proper under 28 U.S.C. § 1391.

### III.     COUNTS

### Count I: Federal False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A)

67.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

68.     The acts complained of herein constitute false advertising and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

69.     Defendant's use of THE RIGHT STUFF$^{TM}$ mark and false statements that Long was a producer on the first season of The Right Stuff without Plaintiff's consent is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Long with

THE RIGHT STUFF<sup>TM</sup> and with Plaintiff, in violation of 15 U.S.C. § 1125(a) and constitutes false advertising, false designation of origin and unfair competition with Plaintiff.

70.     Defendant's actions have been undertaken willfully and intentionally, with the full knowledge that the statements are false, and with full knowledge of the likely confusion or mistake with respect to the source of the goods.

71.     Plaintiff believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's false advertisement in an amount not presently known to Plaintiff. By reason of Defendant's actions, constituting unfair competition, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

### Count II: Federal False Advertising Under 15 U.S.C. § 1125(a)(1)(B)

72.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

73.     The acts complained of herein constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

74.     Defendant's use of THE RIGHT STUFF<sup>TM</sup> mark and false statements that Long was a producer on the first season of The Right Stuff without Plaintiff's consent in commercial advertising or promotion misrepresents the nature, characteristics, and qualities of Plaintiff's goods—the television series The Right Stuff, in violation of 15 U.S.C. § 1125(a) and constitutes false advertising and unfair competition with Plaintiff.

75.     Defendant's actions have been undertaken willfully and intentionally, with the full knowledge that the statements are false, and with full knowledge of the likely confusion or mistake with respect to the source of the goods.

76.     Plaintiff believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's false advertisement in an amount not presently known to Plaintiff. By reason of Defendant's actions, constituting unfair competition, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

## Count III:  Texas Trademark Law

77.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

78.     The acts of Defendant complained of herein are in violation of Texas Business and Commerce Code § 16.102.

79.     As a direct and proximate result of Defendant's conduct, Shipman has suffered damages to its valuable trademarks, and other damages permitted by Texas Business and Commerce Code § 16.104, in an amount to be proved at trial.

## Count IV: Common Law Unfair Competition

80.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

81.     The acts of Defendant complained of herein constitute unfair competition in violation of the common law of the State of Texas.

## Count V: Defamation

82.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though fully set forth herein.

83.     The acts of Defendant complained of herein constitute the tort of defamation under the laws of the State of Texas, specifically Texas Civil Practice and Remedies Code 73.001.

84.     Defendant has knowingly and intentionally made a false statement about Plaintiff's television show, namely that Long was a producer. Defendant made this statement on its website which has been viewed by innumerable third parties to date. The false statement has caused and is causing Plaintiff reputational and material harm and Plaintiff has been damaged by the false statement.

85.     Plaintiff has made numerous requests to Defendant to retract the false statement and Defendant has repeatedly refused.

## VI.     DEMAND FOR A JURY TRIAL

86.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of all issues properly triable by jury.

## IX.     PRAYER FOR RELIEF

87.     WHEREFORE, Plaintiff requests entry of judgment in its favor and against Defendant including the following:

a.     A judgment declaring that Defendant is liable for trademark infringement under 15 U.S.C. § 1125(a), Texas Business and Commerce Code § 16.102, and constitutes unfair competition under state law, and also that Defendant's acts constitute willful infringement under 15 U.S.C. § 1117;

b.     A judgment ordering that Defendant be ordered to pay any and all damages available under 15 U.S.C. § 1117 and Texas Business and Commerce Code §

16.104, including court costs, expenses, enhanced damages, statutory damages to the extent permissible, and attorney's fees;

c.  A grant of a permanent injunction enjoining the Defendant from further acts of infringement and unfair competition;

d.  A judgement for Plaintiff on all other counts asserted herein;

e.  Any other accounting for damages;

f.  Any other appropriate interest and costs; and

g.  For such other and further relief as the Court deems just and proper.

DATED this 13th day of October, 2017.                    Respectfully submitted,

/s/ *Darlene F. Ghavimi*
Darlene F. Ghavimi, Attorney-in-Charge
TX Bar No. 24072114
SDTex. No. 1268315
dghavimi@conleyrose.com
Henry M. Pogorzelski
TX Bar No. 24007852
SDTex. No. 25382
hpogorzelski@conleyrose.com
CONLEY ROSE, P.C.
13413 Galleria Circle, Suite 100
Austin, TX 78738
(512) 610-3410
(512) 610-3456 (fax)

Charles J. Rogers
TX Bar No. 00786205
SDTex No. 19028
crogers@conleyrose.com
CONLEY ROSE, P.C.
575 N. Dairy Ashford Rd., Suite 1102
Houston, Texas 77079
(713) 238-8000
(713) 238-8008 (fax)

*Attorneys For The Shipman Agency, Inc.*